IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CT-3198-FL

| | | |
|---|---|---|
| ANTHONY B. BOWDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CHARLOTTE A. EVANS and PETER | ) | |
| B. WOGLOM, Physician Assistant, | ) | |
| | ) | |
| Defendants.[1] | ) | |

This matter is before the court on the following motions by defendant: 1) for summary judgment pursuant to Federal Rule of Civil Procedure 56, (DE 85), and 2) to seal certain exhibits filed in support of the motion for summary judgment, (DE 91). The motion for summary judgment has been fully briefed and in this posture the issues raised are ripe for ruling. For the reasons that follow, the court grants defendants' motions.

## STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint on August 4, 2016, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendants Charlotte A. Evans ("Evans") and Peter Woglom ("Woglom") were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. As relief, plaintiff seeks compensatory damages and an injunction

---

[1] The court dismissed formerly-named defendants Bertie Correctional Institution, Medical Department, Caledonia Correctional Institution, and Caroline Riddick-Taylor by separate orders entered May 2, 2018, and April 12, 2017.

directing prison officials to provide appropriate care for his medical conditions.

Plaintiff has requested leave to file numerous amended complaints in this action. On March 23, 2017, the court granted two motions to amend the complaint and directed plaintiff to file amended complaint particularizing his claims. On April 12, 2017, the court conducted its frivolity review of plaintiff's amended complaint pursuant to 28 U.S.C. § 1915(e), and allowed the action to proceed as to defendants Evans and Woglom. The court dismissed plaintiff's claims against formerly-named defendants Bertie Correctional Institution and "medical department."

On June 28, 2017, plaintiff moved for appointment of counsel. On June 29, 2017, plaintiff moved for leave to file second amended complaint. On July 3, 2017, the court denied the motion to appoint counsel.

On September 5, 2017, defendants moved to dismiss plaintiff's (first) amended complaint. On September 8, 2017, plaintiff again moved for leave to file second amended complaint. On February 2, 2018, the court granted plaintiffs' motions to amend the complaint, and directed plaintiff to file second amended complaint. In light of this ruling, the court denied as moot defendants' September 5, 2017, motion to dismiss.

Plaintiff timely filed second amended complaint on February 14, 2018. On April 17, 2018, the court directed plaintiff to file third amended complaint particularizing his claims. On April 25, 2018, plaintiff filed the third amended complaint (the "operative complaint"). On May 2, 2018, the court conducted its frivolity review of the operative complaint and dismissed without prejudice plaintiff's claims against formerly-named defendants Caledonia Correctional Institution and Caroline Riddick-Taylor, but allowed the action to proceed as to defendants Evans and Woglom.

On May 23, 2018, defendants filed motion for summary judgment limited to failure to exhaust administrative remedies, or in the alternative to dismiss plaintiff's complaint for failure to state a claim. On March 28, 2019, the court granted the motion to the extent defendants sought dismissal of plaintiff's official capacity claims, but denied the motion in all other respects.

On May 15, 2019, the court entered case management order governing discovery and dispositive motions practice. The parties completed discovery on or about September 23, 2019.

On November 22, 2019, defendants filed the instant motion for summary judgment. In support, defendants rely upon memorandum of law, statement of material facts, and the following: 1) affidavits of defendants Evans and Woglom and 2) plaintiff's medical records. On February 24, 2020, plaintiff responded in opposition to defendants' motion, and also filed ex parte motion for injunctive relief. On March 16, 2020, the court denied plaintiff's motion for injunctive relief and directed the clerk to remove the ex parte designation from said motion.

## STATEMENT OF THE FACTS

The facts, viewed in the light most favorable to plaintiff, may be summarized as follows. As noted, plaintiff's complaint alleges defendants Evans and Woglom were deliberately indifferent to his serious medical needs. Defendant Woglom is a physician assistant employed by the North Carolina Department of Public Safety ("DPS"). (Woglom Aff. (DE 88-2) ¶ 2). Defendant Evans is a medical doctor also employed by DPS. (Evans Aff. (DE 88-1) ¶ 2).

On August 26, 2014, plaintiff was transferred to the Bertie Correctional Institution, and upon arrival he underwent a medical screening. (Woglom Aff. (DE 88-2) ¶ 9). The nursing assessment noted that plaintiff was then receiving medications for eczema (a skin condition), and sinus allergy. (Health Screening Form (DE 90-3)). Between August 26, 2014, and August 15,

2015, plaintiff did not request any further medical treatment for his eczema and he was not seen by either of the defendants. (Woglom Aff. (DE 88-2) ¶ 9; Evans Aff. (DE 88-2) ¶ 9). Plaintiff attended a routine health screening on April 16, 2015, and the nurse observed that plaintiff's skin did not have any signs of draining skin lesions, scabies, rash, open sores, wounds, or other deformities. (Apr. 16, 2015, clinical encounter note (DE 90-4) at 13).[2]

On August 16, 2015, plaintiff submitted a sick call appointment request because he needed a refill for his eczema cream. (Aug. 16, 2015, sick call request (DE 90-5) at 2). Plaintiff also requested additional medication to treat his eczema and new soap. (Id.). A nurse saw plaintiff on September 6, 2015, and provided a new antihistamine medication for his skin condition and referred the medication renewal requests to defendant Evans. (Sept. 6, 2015, clinical encounter note (DE 90-5) at 5-6). The following day, defendant Evans reviewed plaintiff's chart, ordered two new medications for his eczema, and renewed one of his previous prescriptions. (Evans Aff. (De 89) ¶ 11).

On September 13, 2015, plaintiff submitted another sick call appointment request, stating that his skin condition was deteriorating. (Sept. 13, 2015, sick call request (DE 90-7) at 2). Plaintiff was seen by a nurse on September 29, 2015, who referred plaintiff to defendant Woglom for further evaluation. (Sept. 29, 2015, clinical encounter note (DE 90-7) at 3). Defendant Woglom saw plaintiff two days later on October 1, 2015. (Woglom Aff. (DE 88-2) ¶ 13). During that examination, defendant Woglom noted that plaintiff's skin condition was deteriorating and prescribed new medications. (Id.). Defendant Woglom also ordered certain laboratory tests

---

[2] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

and scheduled plaintiff for a skin biopsy and potassium hydroxide skin lesion examination ("skin lesion exam"). (Id.).

On October 8, 2015, defendant Woglom performed the skin biopsy and skin lesion exam. (Id. ¶ 14). On October 21, 2015, defendant Woglom received the results of the biopsy and skin lesion exam, which confirmed plaintiff's eczema diagnosis. (Id. ¶ 16). The skin lesion exam was negative for fungal growth. (Id.). Defendant Woglom met with plaintiff that same day and informed him of the results. (Id.). During the appointment, defendant Woglom observed that plaintiff had lost most of his eyebrows and had scarring as the result of severe itching. (Id.). Defendant Woglom diagnosed plaintiff with severe and disfiguring eczema that was unresponsive to current treatments. (Id.). Defendant Woglom determined a dermatology consultation was appropriate and submitted a utilization review request for a dermatology referral that same day. (Id.).

Between October 22, 2015, and December 28, 2015, plaintiff did not submit additional sick call requests. (Id. ¶ 17). During this period of time, plaintiff took his prescribed eczema medications. (Medication Administration Record (DE 90-12) at 4-8).

On December 29, 2015, defendant Woglom reviewed plaintiff's chart and discovered the utilization review request for dermatology consultation had been denied. (Woglom Aff. (DE 88-2) ¶ 18). The utilization reviewer stated that a trial of local steroids should be considered first, and that plaintiff should be seen by a "unit provider." (Id.). That same day, defendant Woglom entered order scheduling plaintiff for an appointment with a physician extender in two weeks. (Id.).

On January 14, 2016, defendant Woglom met with plaintiff and informed him that the utilization reviewer had denied his request for a dermatology consultation. (Id. ¶ 19). Plaintiff reported to defendant Woglom that his Ketoconazole shampoo was helping and that he was experiencing less itching in general. (Id.). Defendant Woglom noted plaintiff skin "appeared to be improving." (Id.). As a result of this evaluation, defendant Woglom submitted a utilization review request for additional Ketoconazole shampoo and a prescription for oral Ketoconazole medication that same day. (Id.). Defendant Woglom also ordered a hepatic liver panel to rule out liver disease. (Id.). Defendant Evans reviewed the results of the hepatic panel and ordered a repeat panel. (Evans Aff. (DE 88-1) ¶ 19). Defendant Evans reviewed the results and determined no further treatment was necessary at the time. (Id.).

On January 26, 2016, defendant Woglom learned that Ketoconazole shampoo did not require utilization review approval. (Woglom Aff. (DE 88-2) ¶ 20). Therefore, that same day, defendant Woglom entered an order prescribing additional Ketoconazole shampoo for plaintiff. (Id. ¶ 20).

On January 28, 2016, defendant Woglom learned that the utilization review request for oral Ketoconazole had been denied, in favor of Lamisil oral, which did not require utilization review approval. (Id. ¶ 21). Defendant Woglom entered an order prescribing Lamisil Oral for plaintiff that same day. (Id.).

On February 5, 2016, defendant Woglom again met with plaintiff for a follow-up appointment. (Id. ¶ 22). Defendant Woglom noted that plaintiff's skin condition appeared to be improving. (Id.). Defendant Woglom therefore did not change any of plaintiff's medications, but scheduled plaintiff for a follow-up appointment in two weeks. (Id.).

On February 25, 2016, during a routine health screening, plaintiff did not report any painful conditions. (Feb. 25, 2016, Health Screening (DE 90-18)). Plaintiff reported that an over-the-counter psoriasis tar formula he obtained from the commissary "work[ed] very well" for treating his eczema. (Id.). The following day, based on the health screening note, defendant Woglom entered an order prescribing the psoriasis tar formula. (Woglom Aff. (DE 88-2) ¶¶ 24-25).

On March 2, 2016, plaintiff saw defendant Woglom for his previously scheduled follow-up appointment. (Id. ¶ 27). Plaintiff reported that his skin condition was improving, which defendant Woglom confirmed upon visual evaluation. (Id.). Plaintiff requested that he remain on his current medication regimen. (Id.).

On March 20, 2016, plaintiff submitted a sick call appointment request, stating that his eczema was worsening. (Mar. 20, 2016, sick call request (DE 90-21) at 2). Plaintiff stated that his "medication is not working [and] my [eczema] is getting wors[e] than it was. Please help I can't stand it." (Id.). Plaintiff was seen by a nurse on March 24, 2016, who noted that plaintiff's legs were dry and that he had significant scar tissue. (Mar. 24, 2016, clinical encounter note (DE 90-21) at 3). The nurse offered hydrocortisone cream, but plaintiff refused. (Id.). Although the clinical encounter note for this appointment does not reflect a referral to defendant Woglom, defendant Woglom's recollection is that the nurse referred plaintiff to him for further treatment. (Woglom Aff. (DE 88-2) ¶¶ 27-28).

On April 13, 2016, defendant Woglom saw plaintiff based on the nurse's referral request. (Id. ¶ 28). Defendant Woglom evaluated plaintiff and noted plaintiff's skin was "covered" with severe eczema, and that he had inflamed areas on his inner things consisting of scaling, hyperpigmentation, and pimple-like lesions. (Id.). Plaintiff's facial area also was covered with

7

severe seborrheic dermatitis. (Id.). Defendant Woglom diagnosed plaintiff with chronic unspecified pruritic disorder and prescribed a course of prednisone. (Id.). Defendant Woglom also adjusted certain other medications and ordered another hepatic lab panel, which did not show significant liver dysfunction. (Id.).

On April 27, 2016, defendant Woglom saw plaintiff for another follow-up appointment. (Id. ¶ 29). Plaintiff reported that his severe itching had returned after he finished the prednisone treatment, and defendant Woglom noted that plaintiff had flushing and localized edema. (Id.). Defendant Woglom discussed with plaintiff the long-term management of his condition, and submitted another utilization review request for a dermatology consultation and long-term use of Benadryl. (Id.). The utilization review request for Benadryl was approved on April 28, 2016. (Evans Aff. (DE 88-1) ¶ 29 n.17).

On May 1, 2016, plaintiff refused his Benadryl prescription, stating that it was not effective. (Evans Aff. (DE 88-1) ¶ 30). As a result, defendant Evans reviewed plaintiff's chart and discontinued the medication. (Id.).

On May 2, 2016, plaintiff submitted a sick call appointment request, stating that the Benadryl was not effective and requesting Periactin. (May 2, 2016, sick call request (DE 90-25) at 2). Defendant Woglom evaluated plaintiff the following day and prescribed Periactin. (Woglom Aff. (DE 88-2) ¶ 31).

On May 10, 2016, plaintiff was transferred to Caledonia Correctional Institution. (Id. ¶ 32). Defendants Woglom and Evans were not responsible for plaintiff's medical care between May 10, 2016, and April 25, 2018, when plaintiff filed the operative amended complaint. (Id.;

Evans Aff. (DE 88-1) ¶ 32). The utilization review request for the dermatology consultation was approved on June 21, 2016, after plaintiff initiated this action. (Evans Aff. (DE 88-1) ¶ 29 n.17).

**DISCUSSION**

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)

9

("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.  Analysis

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (1996). "In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation omitted). The first prong is objective – the prisoner must show that "the deprivation of [a] basic human need was objectively sufficiently serious." Id. (internal quotation omitted). In the medical context, a basic human need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).

The second prong is subjective – the prisoner must show that "subjectively the officials acted with a sufficiently culpable state of mind." See Strickler, 989 F.2d at 1379 (internal quotations omitted). The mental state for "deliberate indifference entails something more than negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). "It requires that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995); see Farmer, 511 U.S. at 837. A plaintiff therefore must establish the prison official's "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (citing Farmer, 511 U.S. at 837–39). The subjective knowledge requirement can be proved "through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge . . . ." Scinto v. Stansberry, 841 F.3d 219, 225–26 (4th Cir. 2016).

Deliberate indifference is thus "a particularly high bar to recovery." Iko, 535 F.3d at 241. For claims involving medical care, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Negligence or medical malpractice in diagnosis or treatment are not exceptional circumstances. See id.; see also Estelle v. Gamble, 429 U.S. 97, 105–08 (1976).

11

Here, plaintiff has not established that defendants Evans or Woglom were deliberately indifferent to his serious medical needs.³ As set forth in detail above, defendant Woglom provided prompt care for plaintiff's skin condition at every turn. Defendant Woglom, for example, evaluated plaintiff on approximately seven separate occasions, conducted laboratory tests and a skin biopsy, and prescribed numerous medications. (See generally Woglom Aff. (DE 88-2). He also immediately referred plaintiff to a specialist when it became apparent the medications were not fully effective. (Id. ¶¶ 16, 29). To the extent plaintiff disagrees with defendant Woglom's treatment decisions, the claim does not rise to the level of an Eighth Amendment violation. See Wright, 766 F.2d at 849 (holding disagreements between a medical provider and inmate regarding the proper course of treatment do not state a claim for deliberate indifference to serious medical needs); Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986) (dismissing Eighth Amendment claim where "[a] review of the record demonstrates that [the plaintiff] received substantial medical treatment and that the basis of the claim against the medical personnel defendants is a contention of negligence under tort law principles rather than a contention of deliberate indifference under constitutional law principles.").

Defendant Evans, for her part, also prescribed medications for plaintiff's skin condition on at least one occasion. (Evans Aff. (DE 88-1) ¶ 11).⁴ She was not otherwise responsible for treating plaintiff's eczema, and the record evidence does not establish she disregard plaintiff's

---

³ The court assumes without deciding that plaintiff's skin condition satisfies the objective prong of his Eighth Amendment claim.

⁴ As noted, defendant Evans also discontinued plaintiff's Benadryl prescription, but that was only after plaintiff refused to take the medication. (Evans Aff. (DE 88-1) ¶ 30).

condition. (See generally id.). Accordingly, defendant Evans was not deliberately indifferent to plaintiff's serious medical needs.

Plaintiff has not submitted any evidence contesting defendants' account of the medical care he received. Plaintiff argues that the delay in receiving a dermatology appointment caused deterioration of his condition. As set forth above, however, defendant Woglom referred plaintiff to a dermatology specialist within approximately two months of his first sick call request. (Woglom Aff. (DE 88-2) ¶¶ 10, 16). Although the utilization review denied the requested consultation, defendant Woglom was not responsible for that decision. (Id. ¶¶ 18-19); see Formica v. Aylor, 739 F. App'x 745, 756 (4th Cir. 2018) (affirming award of summary judgment on delayed medical care claim where defendants were not responsible for the delay). The record also reflects that plaintiff's condition improved after the initial consultation request was denied, suggesting a further consultation was not immediately necessary. (See Woglom Aff. (DE 88-2) ¶ 26 (noting plaintiff reported to Dr. Woglom on March 2, 2016 that his eczema was "much improved" after interventions by Dr. Woglom). As noted, defendant Woglom submitted a second request for dermatology consultation on April 27, 2016, which was eventually approved in June 2016. (Id. ¶ 29 & n.18). Under these circumstances, there is insufficient evidence in the record to support an Eighth Amendment claim premised on delayed medical care. See Formica, 739 F. App'x at 754-55 (stating standard of review).

In sum, plaintiff has not established a genuine issue of material fact precludes summary judgment on his Eighth Amendment deliberate indifference claim. Accordingly, the court grants defendants' motion for summary judgment.

C. Motion to Seal

Defendants move to seal plaintiff's medical records submitted in support of the instant motion for summary judgment. Plaintiff does not object to sealing these records. The public has received adequate notice of the motion to seal. Regarding the documents defendants seek to seal in their entirety, no less drastic alternative to sealing is available because the private information appears throughout the filings sought to be sealed. Plaintiff's interest in preserving the confidentiality of his private health conditions outweighs any public interest in disclosure. Accordingly, the court grants the motion to seal.

## CONCLUSION

Based on the foregoing, the court GRANTS defendants' motions for summary judgment, (DE 85), and to seal, (DE 91). The clerk is DIRECTED to maintain docket entries 89 and 90 under seal, and to close this case.

SO ORDERED, this the 24th day of March, 2020.

                                                        LOUISE W. FLANAGAN
                                                       United States District Judge